UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Christopher Swanson,                              File No. 19-cv-117 (DWF/LIB)

Plaintiff,

v.
                                                 **REPORT AND RECOMMENDATION**

Wilford, Geske, & Cook, et al.,

Defendants.

---

This matter comes before the undersigned United States Magistrate Judge upon Plaintiff Christopher Swanson's (hereinafter "Plaintiff") Motion for "Temporary Restraining Order— Permanent—Injunction & Demand to Stop Non-Judicial Foreclosure" (hereinafter "Motion for Temporary Restraining Order"), [Docket No. 2],[1] and upon referral from the Honorable Donovan W. Frank. (Order of Reference [Docket No. 6]). Finding a hearing on Plaintiff's Motion unnecessary, the undersigned issues the present Report and Recommendation.

For the reasons discussed herein, the Court recommends that Plaintiff's Motion for Temporary Restraining Order, [Docket No. 2], be **DENIED**.

## I.      Background

Plaintiff initiated the present action on January 15, 2019, by filing his Complaint. [Docket No. 1]. Plaintiff named as Defendants "Wilford, Geske, & Cook, attorneys for the defendant"; Caliber Home Loans, Inc; Rubicon Mortgage Advisors, LLC; and Mortgage Electronic Registration Systems, Inc. (hereinafter collectively "Defendants").

---

[1] Although the title of Plaintiff's Motion contains implications that he, through his present Motion, is seeking a temporary restraining order, a preliminary injunction, and some type of permanent injunction, the body of his Motion refers to a "TRO" and temporary restraining order. (See, Id.). Accordingly, the Court refers to Plaintiff's Motion as one seeking a temporary restraining order.

In his Complaint Plaintiff makes the following assertions:

> 7. The foreclosing party cannot verify they had legal authority to execute the power of sale clause in the deed of trust/promissory note.
> 8. The foreclosing party has no witness to attest to the dispute.
> 9. Defendant's name is not signed on the contract in dispute.
> 10. The defendant failed to obtain the proper, legal valid assignment of mortgage and power of sale.
> 11. The law is clear, however, entities foreclosing upon homeowners must strictly comply with State statutory prerequisites to foreclosure.
> 12. It is the black letter of the law that an entity seeking to foreclose must have the actual legal authority to exercise the power of sale.
> 13. The current foreclosure process has become an undisciplined and lawless rush to seize homes without a witness, the contract or an accounting of the money trail.
> 14. There is no language in the contract granting the "Agreement for Signing Authority" to execute the power of sale clause.

(Compl., [Docket No. 1], at 5).[2] Defendants appear to have foreclosed on Plaintiff's residence, and it further appears that Defendants will cause Plaintiff's residence to be sold through a Sherriff's foreclosure sale on February 5, 2019. (See, Id.). In his "Request for Relief" Plaintiff asserts as follows:

> Plaintiff will suffer "irreparable injury" so the Judge must stop the eviction, vacate the foreclosure judgment, and any proceedings immediately. The foreclosing parties accounting records mentioned in the restraining order will verify the foreclosing party is in violation of Federal money laundering, and wire fraud statutes. The law is clear, entities foreclosing upon homeowners must strictly comply with State and Federal statutory prerequisites to foreclosure. The homeowners demands his day in court to address the illegal and unethical misconduct that started at signing. The homeowner demands the foreclosure sale, and the eviction action be vacated with prejudice because the fatal defects cannot be cured without obstruction the administration of justice. The defect should have to be filed at the start of the case to provide the court with jurisdiction. The homeowner requests 3 times the fraudulent foreclosure claim in reparation.

(Id.).

Contemporaneously with his Complaint, Plaintiff filed the present Motion. (See, Plf.'s Mot. [Docket No. 2]). Plaintiff appears to incorporate the assertions from his Motion into his

---

[2] Plaintiff's assertions begin with the number "7" because the form upon which Plaintiff submitted his Complaint instructs the filer to begin the assertions with the number "7." (See, Id.).

Complaint. (See, Compl., [Docket No. 1], at 5) (discussing "records mentioned in the restraining order").

In his Motion, Plaintiff asserts that "[t]he power of sale clause was not disclosed" to him, "and the foreclosing party has no verification the power of sale clause was agreed by all parties who signed the original contract." (Plf.'s Mot., [Docket No. 2], at 3). Plaintiff further asserts that "[i]n this case the foreclosing party failed to prove consent a necessary element to verify a contractual obligation, and has no legal authority to excise the power of sale clause in the unilateral contract." (Id.). Plaintiff alleges that Defendants never demonstrated that they had a "secured interest in the subject property." (Id.). Plaintiff clarifies that the "primary concern in this matter is the fact that [the] foreclosing party had no legal right to foreclose upon the home, even if the homeowner had not paid as required, if the same foreclosing party has not fully complied with Civil Code" because "[t]he foreclosing party did not have legal authority to execute the power of sale clause, and no document was recorded with the Office of the County Recorder." (Id.).[3]

Based on these assertions Plaintiff ostensibly raises the following causes of action: a claim for violation of federal wire fraud laws, a claim for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), a claim for violations of the Truth in Lending Act, a claim for violations of the Real Estate Settlement Procedures Act, and a claim for violations of certain Minnesota Statutes.  (See, Id. at 5–11).[4]

---

[3] Plaintiff's submission do not specify which of the Defendants he refers to when he refers to the "foreclosing party." (See, Id.).

[4] The Court notes that Plaintiff does not actual raise any distinct or obvious causes of action. (See, Compl. [Docket No. 1]). The causes of action listed here are the causes of action which may be the causes of action Plaintiff is seeking to plead when Plaintiff's pleadings are liberally construed in his favor.

**II.     Plaintiff's Motion for Temporary Restraining Order. [Docket No. 2].**

Plaintiff seeks a temporary restraining order preventing Defendants from selling his residence through a foreclosure sale on February 5, 2019. Plaintiff argues that if the sale is not stopped, then he will suffer irreparable harm, and he asserts the sale should be prevented because Defendants actions as alleged in his pleadings violated various statutes asserted in his pleadings.

**A.  Standard of Review**

When considering a motion for a temporary restraining order or preliminary injunction, the Court considers four factors: (1) the probability that the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of harms as between the parties; and (4) the public interest. S.J.W. ex rel Wilson v. Lee's Summit R7 Sch. Dist., 696 F.3d 771, 776 (8th Cir. 2012) (citing Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109, 113 (8th Cir. 1981)); Tom T., Inc. v. City of Eveleth, No. 03-cv-1197 (MJD/RLE), 2003 WL 1610779, at *3 (D. Minn. Mar. 11, 2003); see also, Watts v. Fed. Home Loan Mortgage Corp., No. 12-cv-692 (SRN/JSM), 2012 WL 1901304, at *3 n.3 (D. Minn. May 25 2012) ("Courts in the Eighth Circuit apply the same standards to a request for a preliminary injunction and temporary restraining order.") (citing S.B. McLaughlin & Co. v. Tudor Oaks Condo. Project, 877 F.2d 707, 708 (8th Cir. 1989); Jackson v. Nat'l Football League, 802 F. Supp. 266, 229 (D. Minn. 1992)); Callerons v. FSI Int'l, Inc., No. 12-cv-2120, 2012 WL 4097832, at *2 (D. Minn. Sept. 18, 2012) (explaining that these factors apply to both preliminary injunctions and temporary restraining orders). "At base, the question is whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined." Dataphase, 640 F.2d at 113. Injunctive relief is extraordinary relief, and the burden of establishing the propriety of an injunction is on the movant. Watkins,

4

Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); see, Roudachevski v. All-American Care Centers, Inc., 648 F.3d 701, 705 (8th Cir. 2011). A temporary restraining order or preliminary injunction cannot issue if the movant fails to demonstrate a likelihood of success on the merits. See, Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010) (quoting Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005)).

While the Court is required to construe the content within Plaintiff pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound by applicable procedural and substantive law. See, Solomon v. Petray, 795 F.3d 777, 787 (8th Cir. 2015); Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Farnsworth v. City of Kansas City, Mo., 863 F.2d 33, 34 (8th Cir. 1988).

**B. Analysis**

On the first factor of whether or not to issue a temporary restraining order, the Court in Dataphase "rejected the notion that the party seeking relief must show 'a greater than fifty percent likelihood that he will prevail on the merits,' holding instead that 'where the balance of other factors tips decidedly toward plaintiff a preliminary injunction may issue if movant has raised questions so serious and difficult as to call for more deliberate investigation." Planned Parenthood Minn. N.D., S.D. v. Rounds, 530 F.3d 724, 731 (8th Cir. 2008) (citing Dataphase, 640 F.2d at 113). Thus, the Eighth Circuit has instructed district courts considering this factor to query whether the moving party has a "fair chance of prevailing." Id. at 732. Accordingly, the Court will consider each of Plaintiff's asserted causes of action to determine whether or not he has demonstrated a "fair chance of prevailing" on his causes of action.[5]

_____

[5] Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint does not need detailed factual allegations, plaintiff's "obligation to

### i. Federal Wire Fraud Laws

Plaintiff asserts that Defendants violated certain "federal wire fraud laws." (Plf. Mot.,

[Docket No. 2], at 5). Plaintiff contends that Defendants "used wire communications, including

but not limited to facsimile's [sic], emails, and the internet to accomplish their scheme to

defraud" Plaintiff "by causing to be sent, filed, and recorded mortgage documents which they

knew or should have known to be fraudulent in violation of 18 U.S.C. Sec. 1343." (Id.). Plaintiff

also asserts that Defendants used the "U.S. Mail more than twice to collect an unlawful debt."

(Id. at 10). Plaintiff alleges that due to Defendants violations Plaintiff is entitled to "relief under

'Civil RICO' Federal Racketeering laws (Title 18 U.S.C. 1964)." (Id.).

Liberally construing Plaintiff's allegations, Plaintiff alleges that Defendants' actions of

foreclosing upon Plaintiff's residence and causing the impending sale of Plaintiff's property

violated the Racketeer Influenced and Corrupt Organization Act (hereinafter "RICO") 18 U.S.C.

§§ 1961 et seq. Plaintiff appears to allege that Defendants violated RICO by contravening the

wire fraud provision of 18 U.S.C. § 1343, which is included in RICO as one of the predicate acts

constituting "racketeering activity."

Under RICO, it is "unlawful for any person employed by or associated with any

enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to

---

provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.''" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67). Court's must draw all reasonable inferences in the plaintiff's favor, but Courts are "not bound to accept as true a legal conclusion couched as a factual allegation." Carton v. General Motor Acceptance Corp., 611 F.3d 451, 454 (8th Cir. 2010) (citations omitted); see, Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level," which "requires more than labels and conclusions, and a formulistic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555.

conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)). "Racketeering activity" is defined to include any act which would subject a person performing the act to indictment under 18 U.S.C. § 1343. See, 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity" is defined as requiring "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Section 1964(c) of the RICO statute "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reasons of a violation' of the Act's criminal prohibitions." Bridge v. Phoenix Bond & Indem. Co., 553 U.S. 639, 641 (2008); see, Stonebridge Collection, Inc. v. Caramichael, 791 F.3d 811, 822 (8th Cir. 2015) (citing 18 U.S.C. § 1964(c)).

To establish a RICO claim, Plaintiff must demonstrate "(1) the existence of an enterprise; (2) defendant[s'] association with the enterprise; (3) defendant[s'] participation in predicate acts of racketeering; and (4) defendant[s'] actions constitute a pattern of racketeering activity." Sinclair v. Hawke, 314 F.3d 934, 943 (8th Cir. 2003) (quoting United HealthCare Corp. v. Amer. Trade Ins. Co. 88 F.3d 563, 570 (8th Cir. 1996)). Plaintiff alleges that Defendants participated in mail and wire fraud in foreclosing on his residence and causing his residence to be subject to an upcoming foreclosure sale.

Plaintiffs asserting RICO claims based on the predicate acts of mail and wire fraud are required to plead facts with the particularity required by Federal Rule of Civil Procedure 9(b). Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009). Thus, a plaintiff asserting such a predicate act must "state with particularity the circumstances constituting a fraud or mistake." Fed. R. Civ. P. 9(b). Typically a plaintiff must identify the 'who, what, where, when, and how" of the alleged fraud. United States ex rel. Costner v. URS Consultants, Inc., 317 F.3d

883, 888 (8th Cir. 2003). Generally, a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the persons making the misrepresentation and what was obtained or given up thereby." Abels v. Farmers Commodities Corp., 259 F.3d 910, 920 (8th Cir. 2001) (quoting Bennett v. Berg, 685 F.2d 1053, 1062 (8th Cir. 1982)). Even pro se parties are required to plead such claims with the particularity required by Rule 9(b). See, Luther v. Am. National Bank of Minnesota, 12-cv-1085 (MJD/LIB), 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012).

In the present case, Plaintiff has failed to demonstrate that Defendants participated in predicate acts of "racketeering activity" as that term is defined by § 1961(1), much less that Defendants' actions constitute a "pattern of racketeering activity" as defined by § 1961(5).

First, Plaintiff fails to allege sufficient facts demonstrating that Defendants' participated in predicate acts of "racketeering activity" as that term is defined by § 1961(1). Plaintiff alleges that Defendants engaged is racketeering by committing wire and mail fraud. (Compl., [Docket No. 1], at 5). To plead mail or wire fraud as a RICO predicate act, Plaintiff must show "(1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of mail or wires to further the scheme." Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999).

Plaintiff only asserts in the most generic and conclusory sense that Defendants committed any action using the mail. And to the extent Defendants did participate in any such action through the mail, Plaintiff fails to assert any factual allegations as to what the contents of those mailing were, when those mailings were received by Plaintiff, and how Defendants made those mailings. In short, Plaintiff assertions fall well short of the particularity required by Rule 9(b).

Plaintiff does allege, albeit in the most conclusory manner, that the contracts and documents upon which Defendants relied to effectuate the foreclosure of Plaintiff's residence are fraudulent. Plaintiff's argument in this regarding, however, is merely a recasting of the "show me the note" theory. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]). "Show me the note" claims, which assert that the foreclosure of a mortgage is invalid if the note and mortgage are held by different entities, are frivolous in Minnesota. Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980–87 (D. Minn. 2012) (explaining that all courts to have addressed the issue "have held–clearly, repeatedly, and recently–that, under Minnesota law, the entity that holds the mortgage can foreclose on the mortgage even if that entity does not also hold the note"). The Eighth Circuit Court of Appeals has also repeatedly reject this "show me the note" argument. See, e.g., Butler v. Bank of Amer., N.A., 690 F.3d 959, 962 (8th Cir. 2012). Plaintiff makes passing reference to several provisions of the Uniformed Commercial Code in apparent support of his "show me the note" arguments; however, these Uniform Commercial Code references are routinely made in support of "show me the note" claims, and have been squarely rejected by the Courts. See, e.g., Stein v. Chase Bank USA, N.A., No. 10-cv-203 (PJS/JSM), 2011 WL 882091, at *3–6 (D. Minn. Feb. 9, 2011).

Thus, the Court finds that Plaintiff has failed to allege facts demonstrating that Defendants' participated in predicate acts of "racketeering activity" as that term is defined by § 1961(1).

Likewise, even if Plaintiff had alleged facts demonstrating that Defendants engaged in some predicate "racketeering act," Plaintiff fails to demonstrate that Defendants engaged in a "pattern of racketeering activity" as defined by § 1961(5). A pattern of racketeering activity is shown through two or more related acts of racketeering activity that "amount to or pose a threat

9

of continued criminal activity." <u>Wisdom v. First Midwest Bank</u>, 167 F.3d 402, 406 (8th Cir. 1999) (quoting <u>United HealthCare Corp. v. Am. Trade Ins. Co.</u> 88 F.3d 563, 571 (8th Cir. 1996)). To do so, "a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (close-end continuity) or evidence the alleged predicate acts threaten to extend in to the future (open-ended continuity)." <u>Craig Outdoor Adver., Inc., v. Viacom Outdoor, Inc.</u>, 528 F.3d 1001, 1028 (8th Cir. 2008).

Even liberally construing Plaintiff's pleadings, Plaintiff has failed to plead any facts demonstrating a pattern of racketeering activity. To the contrary, the allegations in Plaintiff Complaint all stem from individual dealing with Defendants from a single transaction involving only Plaintiff. Even if accepted as true, such a transaction cannot constitute a pattern of racketeering activity. <u>See, e.g.</u>, <u>Handeen v. Lemaire</u>, 112 F.3d 1339, 1353 n. 19 (8th Cir. 1997) (quoting <u>Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank</u>, 934 F.2d 976, 981 (8th Cir. 1991) ("a single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim")).

Accordingly, the Court finds that Plaintiff has failed to demonstrate a likelihood of success of the merits of his RICO claims.

### ii. Federal Debt Collection Practices Act

Plaintiff also purports to raise a claim for violations of the Federal Debt Collection Practices Act (hereinafter "FDCPA"). Plaintiff asserts that "Defendants improperly misrepresented themselves to plaintiff to be the party in interest with legal authority to collect on debts secured by deed when in fact they are not authorized to collect on behalf of the true party in interest." (Plf. Mot., [Docket No. 2], at 5). Liberally construing the allegations in Plaintiff's

pleadings, he asserts Defendants violated the FDCPA by foreclosing on his residence and by engaging in the conduct which effectuated that foreclosure. (See, Id.).

The FDCPA was enacted by Congress to protect consumers "in response to abusive, deceptive, and unfair debt collection practices." Schmitt v. FMA Alliance, Ltd., 398 F.3d 995, 997 (8th Cir. 2005). The Courts of this District, however, have previously found that foreclosure proceedings and the activities effectuating those foreclosure proceedings do not constitute debt collection under the FDCPA. See, e.g., Fleming v. U.S. National Bank Association, No. 14-cv-3446 (DSD/JSM), 2015 WL 505758, at *2 (D. Minn. Feb. 6, 2015); DeMass v. Peterson, Farm & Bergman, No. 12-cv-2197, 2013 WL 1881058, at *2 (D. Minn. May 6, 2013).

In addition, even if Defendants' actions in effectuating the foreclosure of Plaintiff's residence, in foreclosing upon Plaintiff's residence, and causing the foreclosure sale of Plaintiff's residence were subject the FDCPA, the Court would still find that Plaintiff has failed to demonstrate success on the merits of his FDCPA claim. Plaintiff sole argument as to how the Defendants violated the FDCPA is that Defendants foreclosed on his residence without possessing both the mortgage and the promissory note. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]). This again harkens to a variation of Plaintiff's "show me the note" argument which has been squarely and repeatedly rejected by every Court to consider such an argument. See, e.g., Dunbar v. Wells Fargo Bank N.A., 709 F.3d 1254, 1257 (8th Cir. 2013); Butler v. Bank of Amer., N.A., 690 F.3d 959, 962 (8th Cir. 2012); Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980-87 (D. Minn. 2012). The holder of the recorded mortgage is entitled to foreclose, and that holder need not also be the note holder to foreclose said mortgage. See, Jackson v. Mortg. Elec. Registration Sys. Inc., 770 N.W.2d 487, 501 (Minn. 2009).

Therefore, the Court finds that Plaintiff has failed to demonstrate a likelihood of success of the merits of his FDCPA claims.

### iii.  Truth in Lending Act

Plaintiff also asserts a claim for a violation of the Truth in Lending Act (hereinafter "TILA") arguing that "[t]he Truth in Lending Act, Regulation Z, 12 CFR § 226.23, says that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures." (Plf.'s Mot., [Docket No. 2], at 6). Notably, however, Plaintiff does not assert that Defendants failed to provide Plaintiff with the proper disclosures. (See, Id.).

The TILA "grants borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later." Jesinoski v. Countrywide Home Loans, Inc., 135 S.Ct. 790, 792 (2015) (quoting 15 U.S.C. § 1635(a)). Although the TILA provides rescission as a remedy for certain transactions, it expressly excludes recession as a remedy in "residential mortgage transactions." 15 U.S.C. § 1635; see, In re Bestrom, 114 F.3d 741, 745 (8th Cir. 1997) (finding that the TILA does not apply to a mortgage used to acquire real property). The TILA defines "residential mortgage transactions" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x).

In the present case, the record presently before the Court ostensibly indicates that the mortgage at issue in the present case was used to acquire Plaintiff's residence. (See, Compl. Ex. 1 [Docket No. 1-1]) (providing "Notice of Mortgage Foreclosure Sale" which indicates that mortgage was obtained on March 23, 2017, for a residence with the same address as the address

Plaintiff provided the Court as his current address). Plaintiff, who maintains the burden for demonstrating his likelihood of success on the merits, has not made any factual assertions suggesting that the loan at issue in the present case was anything other than a "residential mortgage transaction." (See, Compl. [Docket No. 1]; Plf. Mot. [Docket No. 2]).  Accordingly, to the extent Plaintiff argues that Defendants violated the TILA by not allowing him to rescind the loan at issue in the present case, that argument fails as the TILA explicitly exempts rescission as a remedy for the loan type at issue in the present case.

Moreover, assuming solely for the sake of argument that the loan at issue in the present case was subject to the rescission remedy in the TILA, Plaintiff has not plead any facts sufficient to show that he exercised or even attempted to exercise his right of rescission in a timely fashion. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]). In fact, Plaintiff fails to plead any facts even suggesting that he has attempted to exercise any purported right of rescission. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]).

Accordingly, the Court finds that Plaintiff has failed to demonstrate a likelihood of success of the merits of his TILA claims.

### iv.   Real Estate Settlement Procedures Act

Plaintiff next makes passing references to the Real Estate Settlement Procedures Act (hereinafter "RESPA") which Plaintiff asserts "[p]rovides remedies for deceptive communications from the lender." (Plf. Mot., [Docket No. 2], at 6). Plaintiff does not make any further, specific assertions as to how Defendants violated the Real Estate Settlement Procedures Act. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]).

The RESPA prohibits "kick-backs" to loan brokers and real estate agents, and mandates various disclosures. Specifically, the RESPA requires servicers to provide a written response to a

"qualified written request" seeking "information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1).

A "qualified written request" is statutorily defined as "a written correspondence" which "includes . . . the name and account of the borrower" and also includes "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or" a statement which "provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). After receipt of a qualified written request a servicer must "provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer," as well as, "the name and telephone number of an individual . . . who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(C).

In the present case, Plaintiff fails to allege sufficient facts creating a reasonable inference that he ever sent a qualified written request to Defendants as that terms is defined in 12 U.S.C. § 2605(e)(1)(B). Likewise, Plaintiff fails to allege sufficient facts indicating that Defendants failed to adequately respond to any qualified written request in a timely manner.

Moreover, even assuming solely for the sake of argument that Plaintiff had allege sufficient facts to demonstrate both that he had provided Defendants with a qualified written response and Defendants failed to adequately respond to said qualified written response in a timely manner, the remedy for such failure is limited to "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1); Tyus v. OWB REO, LLC, No. 11-cv-1773, 2011 WL 6101919, at *3 (D. Minn. Oct. 25, 2011) report and recommendation adopted by 2011 WL 5854706 (D. Minn. Nov. 21, 2011) ("A claim under RESPA . . . requires a showing that the violation proximately caused the plaintiff damages.") (alteration in original). "[A] RESPA

14

plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation." Hintz v. JPMorgan Chase Bank, N.A., No. 10-cv-2825, 2011 WL 579339, at *9 (D. Minn. Feb. 8, 2011) (citation and internal quotation marks omitted).

In the present case, the only harm of which Plaintiff complains is the foreclosure of this residence, however, it is unclear how a foreclosure could directly flow from a failure to respond to a qualified written request. Plaintiff has not alleged any facts demonstrating that any perceived or alleged failure by Defendants to comply with the RESPA caused Plaintiff's harm. Under circumstances similar to the present case, Courts have found that plaintiffs who alleged a violation of the RESPA and who alleged a wrongful foreclosure have failed to allege a harm flowing from a violation of the RESPA. See, e.g., Flemings v. U.S. Bank National Association, No. 14-cv-3446 (DSD/JSM), 2015 WL 505758, at *4 (D. Minn. Feb. 6, 2015).

Accordingly, the Court finds that Plaintiff has failed to demonstrate a likelihood of success of the merits of his RESPA claims.

### v. Minnesota Statutes

Plaintiff also asserts that Defendants are "in violation of Chapter 514 of the Minnesota Statutes." (Plf. Mot., [Docket No. 2], at 1). Plaintiff, however, only refers to Chapter 514 of the Minnesota Statutes as a whole. Plaintiff fails to allege the specific provision of Chapter 514 which he believes Defendants violated. (See, Id.). Plaintiff only asserts general actions a person at large could take which may be in violation of unspecified provisions of Chapter 514. (See, Id.).

These are exactly the type of conclusory allegations and labels Iqbal and Twombly prohibit. Plaintiff fails to assert the specific provision of Chapter 514 he believes Defendants

violated, and Plaintiff fails to allege any specific facts giving rise to a reasonable inference of the provision of Chapter 514 he believes Defendants violated or how he believes Defendants violated that unspecified provision. Plaintiff may be attempting to assert that Defendant allegedly fraudulent actions violated the entirety of Chapter 514, however, Plaintiff fails to make any specific factual assertions demonstrating the fraudulent actions he believes Defendants took other than Plaintiff's "show me the note" theory which—as already noted—has been rejected by every Court to consider it. See, e.g., Dunbar v. Wells Fargo Bank N.A., 709 F.3d 1254, 1257 (8th Cir. 2013); Butler v. Bank of Amer., N.A., 690 F.3d 959, 962 (8th Cir. 2012); Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980-87 (D. Minn. 2012).

Accordingly, the Court finds that Plaintiff has failed to demonstrate a likelihood of success of the merits of his claims based on an unspecified provision of Chapter 514 of the Minnesota Statutes.

Because Plaintiff has failed to demonstrate a likelihood of success on the merits of any of his claims, a temporary restraining order cannot issue. See, Beeks v. CitiMortgage, Inc., No. 14-cv-4603 (MJD/HB), 2014 WL 5704205, at *5 (D. Minn. Nov. 5, 2014); Wickner v. Larson, No. 9-cv-940 (DWF/JJK), 2010 WL 98940, at *3 (D. Minn. Jan. 11, 2010) (quoting Mid-Am. Real Estate Co. v. Iowa Realty Co., 406 F.3d 969, 972 (8th Cir. 2005)). Therefore, the undersigned recommends that Plaintiff's Motion for "Temporary Restraining Order—Permanent—Injunction & Demand to Stop Non-Judicial Foreclosure", [Docket No. 2], be denied.

## III.   Objection Period

The undersigned notes that one last issue warrants discussion—the time in which Plaintiff is permitted to object to the present Report and Recommendation, if he so chooses.

This Report and Recommendation is not an Order or judgment of the District Court, and it is, therefore, not appealable directly to the Eighth Circuit Court of Appeals. Instead, Local Rule 72.2(b)(1) provides that "[a] party may file and serve specific written objections to a magistrate judge's" Report and Recommendation, such as the present Report and Recommendation "within 14 days after being served with a  copy of the" Report and Recommendation, "unless the court sets a different deadline." LR 72.2(b)(1).

Thus, under normal circumstances Plaintiff would be permitted fourteen (14) days in which to file his objections to the present Report and Recommendation, if he choose to object. See, Id. In the present case, however, the conduct which Plaintiff seeks to enjoin—the foreclosure sale of his residence—is presently scheduled to occur on February 5, 2019. (Compl. Ex. 1 [Docket No. 1-1]). Therefore, if Plaintiff were permitted the full fourteen days in which to file objections to the present Report and Recommendation, then the foreclosure sale of his residence would be completed before the objection period ended. This limited time frame is likely why Plaintiff sough expedited handling of his Motion. (See, Plf.'s Mot. [Docket No 2]) (requesting expedited handling of the present Motion).

Therefore, in the interest of fairness, the Court, in its inherent power to do so, shortens to three (3) days the time in which Plaintiff is permitted to object to the present Report and Recommendation.[6] An objection period of any longer duration would eviscerate Plaintiff's opportunity to obtain the relief he seeks in the present Motion.

---

[6] Under normal circumstances, a party may respond to those objections within fourteen days after being served a copy of the objections.  LR 72.2(b)(2). In the present case, however, Plaintiff is the only party who has filed any pleadings in relation to the present Motion. Although Defendant Caliber Home Loans, Inc. and Defendants Mortgage Electronic Registration Systems, Inc.'s counsel of record recently filed a Notice of Appearance, [Docket No. 8], no Defendant has filed a pleading responding to the present Motion. Accordingly, the Court finds no need for there to be a time period in which parties may respond to Plaintiff's objections.

If Plaintiff chooses to file an objection to the present Report and Recommendation, he must do so as soon as practicable and in no event later than February 1, 2019. And no period of time in which to respond to Plaintiff's objection will be permitted.

## IV.    Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED THAT** Plaintiff's Motion for "Temporary Restraining Order—Permanent—Injunction & Demand to Stop Non-Judicial Foreclosure", [Docket No. 2], be **DENIED**.

Dated: January 29, 2019                                        s/Leo I. Brisbois
                                                                    Leo I. Brisbois
                                                                    United States Magistrate Judge