Christopher Swanson,                                    File No. 19-cv-117 (DWF/LIB)

                              Plaintiff,

           v.                                          **ORDER AND**
                                              **REPORT AND RECOMMENDATION**

Wilford, Geske, & Cook, et al.,

                              Defendants.

This matter comes before the undersigned United States Magistrate Judge upon Defendant Wilford, Geske, & Cook's Motion to Dismiss, [Docket No. 26]; Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss, [Docket No. 31]; Defendant Rubicon Mortgage Advisors, LLC's Motion to Dismiss, [Docket No. 44]; Plaintiff's Motion to Compel Arbitration, [Docket No. 51]; Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion to Vacate Arbitration Award, [Docket No. 62]; Defendant Rubicon Mortgage Advisors, LLC's Motion to Vacate Arbitration Award, [Docket No. 70]; Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion for Sanctions Against Plaintiff, [Docket No. 74]; and Plaintiff's Motion for Imposition of Automatic Stay. [Docket No. 81]. The parties' Motions were referred to the undersigned by the Honorable Donovan W. Frank. (Order of Reference [Docket No. 6]).

For the reasons discussed herein, Defendants Caliber Home Loans, Inc. (hereinafter "Defendant Caliber") and Mortgage Electronic Registration Systems, Inc.'s (hereinafter

"Defendant MERS") Motion for Sanctions Against Plaintiff, [Docket No. 74], is **DENIED**, and Plaintiff's Motion for Imposition of Automatic Stay, [Docket No. 81], is **DENIED as moot**.

Additionally, the Court **RECOMMENDS** that Defendant Wilford, Geske, & Cook's Motion to Dismiss, [Docket No. 26], be **GRANTED**; Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss, [Docket No. 31], be **GRANTED**; Defendant Rubicon Mortgage Advisors, LLC's Motion to Dismiss, [Docket No. 44], be **GRANTED**; Plaintiff's Motion to Compel Arbitration, [Docket No. 51], be **DENIED as moot**; Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion to Vacate Arbitration Award, [Docket No. 62], be **GRANTED**; and Defendant Rubicon Mortgage Advisors, LLC's Motion to Vacate Arbitration Award, [Docket No. 70], be **GRANTED**.

## I.      Background

Plaintiff initiated the present action on January 15, 2019, by filing his Complaint. [Docket No. 1]. Plaintiff named as Defendants "Wilford, Geske, & Cook, attorneys for the defendant"; Caliber Home Loans, Inc; Rubicon Mortgage Advisors, LLC; and Mortgage Electronic Registration Systems, Inc. (hereinafter collectively "Defendants").

In his Complaint, Plaintiff makes the following assertions:[1]

7. The foreclosing party[2] cannot verify they had legal authority to execute the power of sale clause in the deed of trust/promissory note.
8. The foreclosing party has no witness to attest to the dispute.
9. Defendant's[3] name is not signed on the contract in dispute.
10. The defendant failed to obtain the proper, legal valid assignment of mortgage and power of sale.

---

[1] Plaintiff's assertions begin with the number "7" because the form upon which Plaintiff submitted his Complaint instructs the filer to begin the assertions with the number "7." (<u>See</u>, <u>Id.</u>).
[2] Plaintiff's Complaint does not specific which Defendant he is referring to when he references the "foreclosing party." (<u>See</u>, Compl. [Docket No. 1]).
[3] Throughout his Complaint, Plaintiff refers to "Defendant" in the singular; however, he does not specify to which Defendant he is referring. (<u>See</u>, Compl. [Docket No. 1]).

11. The law is clear, however, entities foreclosing upon homeowners must strictly comply with State statutory prerequisites to foreclosure.

12. It is the black letter of the law that an entity seeking to foreclose must have the actual legal authority to exercise the power of sale.

13. The current foreclosure process has become an undisciplined and lawless rush to seize homes without a witness, the contract or an accounting of the money trail.

14. There is no language in the contract granting the "Agreement for Signing Authority" to execute the power of sale clause.

(Compl., [Docket No. 1], at 5).

The "Notice of Mortgage Foreclosure Sale" Plaintiff filed as an attachment to his Complaint, indicates that on March 23, 2017, Plaintiff along with his wife and another husband and wife pair took out a mortgage in the amount of $389,500.00 to secure the purchase of a property at "1108 W Summerwood Trl, Dilworth, MN 56529-1546." (Notice of Mortgage Foreclosure Sale [Docket No. 1-1]). The mortgagee on that mortgage, at the time it originated, was "Mortgage Electronic Registration Systems, Inc., as nominee for Rubicon Mortgage Advisors, LLC, . . . ." (Id.). That mortgage was then assigned to Caliber Home Loans, Inc. on July 17, 2018. (Id.). After that mortgage went into arrears and default, Plaintiff was provided notice of said a foreclosure sale. (Id.).[4]

In his "Request for Relief" Plaintiff asserts as follows:

Plaintiff will suffer "irreparable injury" so the Judge must stop the eviction, vacate the foreclosure judgment, and any proceedings immediately. The foreclosing parties accounting records mentioned in the restraining order will verify the foreclosing party is in violation of Federal money laundering, and wire fraud statutes. The law is clear, entities foreclosing upon homeowners must strictly comply with State and Federal statutory prerequisites to foreclosure. The homeowners demands his day in court to address the illegal and unethical misconduct that started at signing. The homeowner demands the foreclosure sale, and the eviction action be vacated with prejudice because the fatal defects cannot be cured without obstruction the administration of justice. The defect should have to be filed at the start of the case to provide the court with jurisdiction. The homeowner requests 3 times the fraudulent foreclosure claim in reparation.

(Id.).

---

[4] This foreclosure sale was later cancelled when Plaintiff filed a voluntary bankruptcy Petition.

Based on his assertions Plaintiff ostensibly raises the following causes of action: a claim for violation of federal wire fraud laws, a claim for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), a claim for violations of the Truth in Lending Act, a claim for violations of the Real Estate Settlement Procedures Act, and a claim for violations of certain Minnesota Statutes. (See, Id.; Plf.'s Mot. for TRO, [Docket No. 2], at 5–11).[5]

Contemporaneous with his Complaint, Plaintiff filed a Motion for Temporary Restraining Order. (See, Plf.'s Mot. [Docket No. 2]). After Judge Frank referred Plaintiff's Motion for a Temporary Restraining Order to the undersigned, on January 29, 2019, the undersigned entered a Report and Recommendation recommending Plaintiff's Motion for Temporary Restraining Order be denied. (Report and Recommendation [Docket No. 11]). On February 21, 2019, Judge Frank adopted the undersigned's report and recommendation and denied Plaintiff's Motion for Temporary Restraining Order. (Order [Docket No. 39]).

Defendants each responded to Plaintiff's Complaint with a Motion to Dismiss. (Motions to Dismiss [Docket Nos. 26, 31, 44]). The Court previously established briefing schedules for each of these Motions to Dismiss. (Orders [Docket Nos. 40, 50).

Thereafter, Plaintiff filed his Motion to Compel Arbitration. [Docket No. 51]. Plaintiff's Motion to Compel Arbitration seeks an Order of this Court requiring the parties to participate in arbitration proceedings and to stay proceedings in this Court during the pendency of that arbitration. (See, Plf.'s Mot. to Compel Arbitration [Docket No. 51]).

On May 9, 2019, Plaintiff filed a "Notice of Registration of Foreign Final Judgment/Arbitration Pursuant to [28 U.S.C. § 1963]." (Plf.'s Notice [Docket No. 68]) (brackets

---

[5] The Court notes that Plaintiff does not actually raise any distinct or obvious causes of action. (See, Compl. [Docket No. 1]). The causes of action listed here are the causes of action which may be the causes of action Plaintiff is seeking to plead when Plaintiff's pleadings, including his Complaint which purports to incorporate his now-denied Motion for Temporary Restraining Order, are liberally construed in his favor. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984).

in original). Plaintiff's Notice indicated that a "foreign final judgment via arbitration award on the merits" had been "issued by HMP Dispute Resolution Arbitration." (Id.). Plaintiff attached to that Notice a document he entitled an "Arbitration Award." (Arbitration Award [Docket No. 68-1]). The Notice and purported Arbitration Award appear to involve only Defendants Caliber, MERS, and Rubicon. (See, Id.).

Defendants Caliber, MERS, and Rubicon subsequently moved to vacate the purported Arbitration Award. (Defs.' Mots. [Docket Nos. 62, 70]). The Court thereafter established briefing schedules on the parties newly filed Motions. (Order [Docket No. 69]).

After the Court established said briefing schedule, Defendants Caliber and MERS filed their Motion for Sanctions Against Plaintiff. [Docket No. 74]. Thereafter, the Court established yet another briefing schedule, and it informed the parties that it would not accept or entertain any further motions until the then-currently pending Motions were ruled upon. (Order [Docket No. 80]).

Subsequently, Plaintiff filed a "Notice of Bankruptcy and Motion for Imposition of Automatic Stay." [Docket No. 81].

## II.    Plaintiff's Motion for Imposition of Automatic Stay. [Docket No. 81].

Plaintiff's "Notice of Bankruptcy and Motion for Imposition of Automatic Stay," [Docket No. 81], purports to serve two purposes. First, the filing is intended to inform this Court that Plaintiff claims to have "filed for protection under the US Bankruptcy Court," and therefore, according to Plaintiff, the dispute underlying the present action "properly belongs in the US District Court of Minnesota, Bankruptcy Division." (Id.). Second, Plaintiff's filing "requests that this Court stay any further proceedings and defer the subject matter of these proceedings to the US Bankruptcy Court." (Id.).

The Court has independently verified that Plaintiff did file a Chapter 13 voluntary petition for bankruptcy on May 20, 2019. In re Christopher Lee Swanson, No. 19-BKY-60302, Petition (Bankr. D. Minn. May 20, 2019). Plaintiff's Petition included Defendant Caliber as a creditor. Id.

However, on July 15, 2019, the Honorable Michael E. Ridgway, United States Bankruptcy Judge for the United States Bankruptcy Court, District of Minnesota, dismissed Plaintiff's Petition for bankruptcy. In re Christopher Lee Swanson, No. 19-BKY-60302, Order (Bankr. D. Minn. July 15, 2019). Judge Ridgway reasoned that Plaintiff was "not eligible for relief pursuant to 11 U.S.C. section 109(h)" because he had "not received credit counseling with the statutorily required time period." Id. On August 9, 2019, the Trustee assigned to Plaintiff's Petition filed his "Final Report and Account" again acknowledging that the Petition had been dismissed on July 15, 2019, and that no amounts were paid to any creditor on behalf of Plaintiff. In re Christopher Lee Swanson, No. 19-BKY-60302, Final Report and Account (Bankr. D. Minn. August 9, 2019).

In the present case, Plaintiff's "Notice of Bankruptcy and Motion for Imposition of Automatic Stay," [Docket No. 81], seeks an Order of this Court "stay[ing] any further proceedings and defer[ring] the subject matter of these proceedings to the US Bankruptcy Court." In other words, Plaintiff seeks an Order of this Court staying the present action in this Court during the pendency of his Bankruptcy Petition in the Bankruptcy Court. (See, Plaintiff's "Notice of Bankruptcy and Motion for Imposition of Automatic Stay [Docket No. 81]).

Plaintiff's Bankruptcy Petition has now, however, been dismissed by the Bankruptcy Court. In re Christopher Lee Swanson, No. 19-BKY-60302, Order (Bankr. D. Minn. July 15, 2019). And Plaintiff's bankruptcy proceeding has now been closed. Id.

The termination of Plaintiff's bankruptcy proceeding has rendered moot Plaintiff's request that the present action be stayed pending resolution of his now-terminated bankruptcy proceeding. Accordingly, Plaintiff's "Motion for Imposition of Automatic Stay," [Docket No. 81], is **DENIED as moot**.

### III.   Plaintiff's Motion to Compel Arbitration. [Docket No. 51].

Plaintiff's Motion to Compel Arbitration, [Docket No. 51], seeks an Order of this Court requiring the parties to participate in arbitration proceedings and to stay proceedings in this Court during the pendency of that arbitration. (See, Plf.'s Mot. to Compel Arbitration [Docket No. 51]). Plaintiff's Motion asserts that "a new private settlement contract exists between the parties"; that a "binding arbitration is underway, which affects the judication [sic] of this court to proceed"; that the Court should require all parties to participate in arbitration; and that this Court should stay the present proceedings pending the outcome of said arbitration proceedings. (Id.).

Although Plaintiff moves this Court for an Order compelling arbitration and staying the present action during the pendency of that arbitration, on May 9, 2019, Plaintiff also filed a document he entitled "Notice of Registration of Foreign Final Judgment/Arbitration Pursuant to [28 U.S.C § 1963]" in which Plaintiff indicates that the requested arbitration proceeding took place on April 19, 2019. ("Notice of Registration of Foreign Final Judgment/Arbitration Pursuant to [28 U.S.C § 1963]" [Docket No. 68]) (brackets in original). In fact, contemporaneous with this filing, Plaintiff also filed a document he refers to as "[a]n original certified copy of the final judgment determination" and which he entitled "Arbitration Award." This purported arbitration award also indicates that the requested arbitration took place, and an award issued, on April 19, 2019.

The purported arbitration having already taken place on April 19, 2019, renders moot Plaintiff's request that this Court require the parties to engage in the arbitration process and stay the present action pending the resolution of that arbitration process. Because, by Plaintiff's own representations, the requested proceedings have already apparently taken place, there is no relief left to be granted in Plaintiff's Motion to Compel Arbitration. [Docket No. 51].

Therefore, Plaintiff's Motion to Compel Arbitration, [Docket No. 51], is **DENIED as moot**.

**IV.    Defendants Caliber, MERS, and Rubicon's Motions to Vacate Arbitration Award. [Docket Nos. 62, 70].**

Defendants Caliber and MERS Motion to Vacate the Arbitration Award, [Docket No. 62], seeks an Order of this Court vacating "the fraudulent arbitration award invalidly obtained and fraudulently presented to this Court by Plaintiff." (Def. Caliber and MERS' Mot. [Docket No. 62]). Defendants Caliber and MERS contend that the arbitration award should be vacated because "Plaintiff commenced sham arbitration proceedings, without any agreement between the parties or authority to do so while the present action was pending; and unilaterally named an unqualified and biased individual to hear the sham arbitration proceedings for the purpose of obtaining a fraudulent award." (Id.). Defendant Rubicon's Motion to Vacate the Arbitration Award, [Docket No. 70], joined Defendants Caliber and MERS "motion in its entirety and requests that the Court vacate" the purported arbitration award.

For his part, Plaintiff argues the purported arbitration award should not be vacated because Defendants failed to appear at the arbitration proceedings, because Defendants failed to

waive any right to arbitration, and because "the arbitration was not fundamentally irrational nor did it fail to draw its essence from the parties' agreement." (Plf.'s Response [Docket No. 73]).[6]

As acknowledged by Plaintiff, the Federal Arbitration Act (hereinafter the "FAA") governs arbitration agreements relating to interstate commerce. 9 U.S.C. §§ 1–16. Plaintiff contends the purported arbitration proceedings related to the present case were conducted pursuant to the FAA. The FAA provides:

> A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exists at law or equity for the revocation of any contract.

9 U.S.C. § 2.

"A court's role under the FAA is . . . limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute." Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004) (citing Gannon v. Circuit City Stores, Inc., 262 F.3d 677, 680 (8th Cir. 2001)). In making these determinations, Court generally apply state law principles that govern contract formation. Hamilton-Warwick v. Version Wireless, No. 16-cv-3461 (JRT/BRT), 2017 WL 1740462, at *4 (D. Minn. Apr. 12, 2017).

---

[6] Plaintiff's Response in opposition to Defendants' Motions to Vacate the Arbitration Award also contains a number of arguments related to Defendants' Motions to Dismiss, including a conclusory contention that if the Court were to vacate the arbitration award "the Court should refer the matter back to arbitration for further litigation and/or permit the plaintiff leave to amend whatever deficiencies in the Complaint the Court believes merits such a drastic measure." (Id. at 1–7). To the extent Plaintiff's memorandum is seeking leave to amend his Complaint, that request is improper. See, Local Rule 7.1; see, e.g., Alexander v. Hedback, No. 11-cv-3590 (ADM/JSM), 2012 WL 2004103, at *5 (D. Minn. June 5, 2012) (explaining that a party cannot amend its complaint through a memorandum), aff'd, 718 F.3d 762 (8th Cir. 2013). Plaintiff has not moved to amend his Complaint in the present case, and no such request is properly before this Court.

Before an arbitration award may be enforced against a party, the Court must engage in a limited review to ensure that the dispute "is arbitrable—i.e., that a valid agreement to arbitrate exists between the parties and that the specific dispute falls within the substantive scope of that agreement" because a party cannot be bound by an "arbitral award" unless "it has agreed to arbitrate." Daisy Mfg. Co. v. NCR Corp., 29 F.3d 389, 392 (8th Cir. 1994) (citing PaineWebber, Inc. v. Hartmann, 921 F.2d 507, 511 (3d Cir. 1990)). The FAA does not require parties to arbitrate or be bound by an arbitration where the party has not agreed to be bound by arbitration. See, E.E.O.C. v. Waffle House, Inc., 534 U.S. 279, 293 (2002); 9 U.S.C. § 2. The party seeking to compel, or as in the present case enforce, arbitration has the burden of demonstrating that a valid agreement to arbitrate exists. See, Ikechi v. Verizon Wireless, No. 10-cv-4554 (JNE/SER), 2012 WL 3079254, at *4 (D. Minn. July 6, 2012), (citing Dialysis Access Center, LLC v. RMS Lifeline, Inc., 638 F.3d 367, 375 (1st Cir. 2011); Houlihan v. Offerman & Co., 31 F.3d 692, 694–95 (8th Cir. 1994)), report and recommendation adopted sub nom. Albert v. Verizon Wireless, 2012 WL 3079072 (D. Minn. July 30, 2012).

In the present case, Plaintiff has wholly failed to demonstrate that any valid agreement to arbitrate exists between the parties. In his Response to the Motions to Vacate the purported arbitration award, Plaintiff failed to demonstrate any agreement between the parties which Plaintiff believes constituted an agreement that bound the parties to arbitrate Plaintiff's present claims. (Plf.'s response [Docket No. 73]). Similarly, Plaintiff fails to identify any agreement between the parties in which the parties agreed to be bound to arbitrate in either the "Notice of Registration of Foreign Final Judgement/Arbitration" or the purported "Arbitration Award" he filed. Rather, Plaintiff states only that he "immediately moved to compel arbitration and held an arbitration right away." (Id. at 2).

In his previously discussed Motion to Compel Arbitration, Plaintiff only conclusorily asserted that "a private settlement contract exists between the parties." (Plf.'s Mot. to Compel, [Docket No. 51], at 1). Although the text of Plaintiff's lengthy Motion to Compel Arbitration makes generic references to various agreements and contracts, he does not at any place in his submissions actually point to any agreement which exists between the parties of this litigation where they agreed to arbitrate the present claims. (See, Id.). Instead, the vast majority of Plaintiff's lengthy, now-moot Motion to Compel Arbitration appears to be excerpts from the pleadings of other litigants in other, unrelated cases, as well as, portions of Court Orders from other unrelated cases. (See, Id.) (referring to multiple plaintiffs; discussing parties in a Californian case; discussing agreements between unrelated parties in different fonts from various copied sources; discussing a contract already present by the parties and discussed between the Court and the parties in some unrelated, unspecified case; and seeking to dismiss claims raised by various defendants even though Defendants here have not raised any claims).

Plaintiff also attached to his Motion to Compel several documents he refers to as exhibits including a letter he previously sent Defendants in which he stated that they were parties to a contract "initiated by [their] confirmed receipt" of a mailing "via USPS Fist Class Postage Prepaid delivered on 11 February 2019, 12 February 2019, and 11 February 2019 . . . ." (Exhibit [Docket No. 51-2]). Overlooking the material fact that even this purported contract is alleged to have come into existence after the present case was initiated, Plaintiff still fails to provide the Court with any copy of or reference to a specific agreement between the parties in which the parties agreed to be bound to participate in an arbitration. (See, Id.) The documents filed as exhibits by Plaintiff consist only of letters written by Plaintiff; excerpts of legal definitions captured from an unspecified website; images captured from various websites, including

purported governmental websites and examples of contracts with purported arbitration clauses; a list of "PROOF[s] of CLAIM" unrelated to the facts of the present case; excerpts from various purported legal treatises; and tracking information for letters Plaintiff mailed through the United States Postal Service. (See, Id.).

As observed above, it is Plaintiff who bears the burden of demonstrating that a valid agreement to arbitrate does in fact exist. See, Ikechi, 2012 WL 3079254, at *4. Even liberally construing Plaintiff's pro se pleadings and drawing all reasonable inference thereon in his favor, Plaintiff has failed to demonstrate that any valid agreement to arbitrate exists between the parties. This alone is a sufficient basis upon which to vacate the purported arbitration award.

The Court further notes, however, that pursuant to the FAA, the Court may vacate an arbitration award in circumstances:

> (1) where the award was procured by corruption, fraud, or undue means;
> (2) where there was evident partiality or corruption in the arbitrators, or either of them;
> (3) where the arbitrators were guilty of misconduct in refusing to postpone the hearing, upon sufficient cause shown, or in refusing to hear evidence pertinent and material to the controversy; or of any other misbehavior by which the rights of any party have been prejudiced; or
> (4) where the arbitrator exceeds their powers, or so imperfectly executed them that a mutual, final, and definite award upon the subject submitted was not made.

9 U.S.C. § 10(a).

In the present case, the purported arbitration award fails to pass muster under 9 U.S.C. § 10. The undersigned has already concluded that the record now before the Court fails to demonstrate the existence of any "contract" or agreement to arbitrate between the parties which would support the purported "Arbitration Award." [Docket No. 68-1]. Without such an underlying agreement or application of such a contract, the Court is under no obligation to provide any deference to the purported arbitrator. See, 9 U.S.C. §§ 2, 10; see, gen., Crawford

Grp., Inc. v. Holekamp, 453 F.3d 971, 976 (8th Cir. 2008). Absent an agreement between the parties to be bound by arbitration, the arbiter necessarily "exceeds [his] powers" because he lacks any power to bind the parties by arbitration. Pursuant to 9 U.S.C. § 10(a)(4), this provides a more than sufficient basis to vacate the purported arbitration award.

Therefore, the undersigned **RECOMMENDS** that Defendants Caliber and MERS's Motion to Vacate the Arbitration Award, [Docket No. 62], be **GRANTED**, and that Defendant Rubicon's Motion to Vacate the Arbitration Award, [Docket No. 70], be **GRANTED**. Accordingly, the undersigned further recommends that the "Arbitration Award," [Docket No. 68-1], be **VACATED**, and likewise, that Plaintiff's "Notice of Registration of Foreign Final Judgment/Arbitration Pursuant to [28 U.S.C. § 1963]," be **VACATED**.

## V.    Defendants' Motions to Dismiss. [Docket Nos. 26, 31, 44].

Defendant Wilford, Geske, & Cook's Motion to Dismiss, [Docket No. 26], seeks an Order of this Court dismissing Plaintiff's Complaint with prejudice. Specifically, Defendant Wilford, Geske, & Cook contends that at all times relevant to the Complaint it was acting within its scope as "foreclosure counsel for" Defendant Caliber, and therefore it is immune from any purported liability arising out of the allegations in Plaintiff's Complaint. (See, Def.'s Mem., [Docket No. 28], at 6–8). Defendant Wilford, Geske, & Cook also argues that Plaintiff's Complaint fails to make any factual allegation as to any conduct specifically undertaken by Defendant Wilford, Geske, & Cook. (See, Id. at 8). As an alternative argument, Defendant Wilford, Geske, & Cook contends that Plaintiff failed to properly serve Defendant Wilford, Geske, & Cook because, despite his filing of a "Summon Returned Executed," Plaintiff did not cause a "managing agent authorized to accept service" to be served with service of process, but

instead, he caused a "part-time receptionist" who was not authorized to accept service to be provided with service of process forms. (Id. at 8–9).

Defendants Caliber and MERS also move this Court for an Order dismissing Plaintiff's Complaint. (Defs.' Mot. [Docket No. 31]). Specifically, Defendants Caliber and MERS contend that Plaintiff has failed to state a claim upon which relief can be granted because Plaintiff's Complaint is based on a "show me the note" theory which has been routinely rejected by Courts. (Defs.' Mem., [Docket No. 32], at 1–5). Defendants Caliber and MERS also argue that Plaintiff's Complaint fails to state a claim upon which relief may be granted because it is "nothing but recitation of law without any factual basis for his claim." (Id. at 5–11).

Similarly, Defendant Rubicon seeks an Order of this Court dismissing Plaintiff's Complaint with prejudice based on Defendant Rubicon's belief that the Complaint fails to state a claim upon which relief may be granted. (Def.'s Mot. [Docket No. 44]). Defendant Rubicon purports to join in the arguments of the other Defendants, and it contends that Plaintiff's Complaint is merely a "threadbare recital of the elements" based on legal theories regularly and routinely reject by Courts. (Def.'s Mem., [Docket No. 48], at 1–2). Defendant Rubicon also contends that Plaintiff's Complaint must be dismissed because Plaintiff's Complaint fails to proffer any factual allegations as to Defendant Rubicon's involvement in the circumstances described in Plaintiff's Complaint. (Id. at 2–4).

In an apparent collective response to all of Defendants' Motions to Dismiss, Plaintiff filed a document he entitled "Opposition to Defendants Combined Motions to Dismiss; Motions to Confirm Arbitrations Award and Plaintiff's Motion to Strike Hearsay Motion and Incorporated Memo of Points and Authorities in Support." [Docket No. 73]. In this Response, Plaintiff purports to raise six points: (1) "there has been no waiver of arbitration and the

Arbitration award deprives the Court of further jurisdiction to determine the merits of the Complaint and there is a strong policy in favor of arbitration"; (2) "the arbitration was not fundamentally irrational nor did it fail to draw its essence from the parties' agreement";[7] (3) the "standard on motion to dismiss"; (4) "the Complaint should be liberally construed"; (5) "if the Court vacated the award, the court should refer the matter back to arbitration for further litigation and/or permit the plaintiff leave to amend whatever deficiencies in the Complaint the Court believes merits such a drastic measure";[8] and (6) "the Complaint states a cause of action for each allegation made by the Plaintiff." (Plf.'s Response, [Docket No. 73], at 1–8).

In support of the assertion that his Complaint states proper causes of action, Plaintiff states in his written response to the Motions:

> The original Lender has created a specific scheme to harm the Defendants. The agreement the Defendants have with the servicer created a scenario where the servicer is rewarded for compounding fees, costs, and fraudulent charges on the Plaintiff. The language of the servicing agreement is such that the servicer keeps all of the late charges, fees and costs imposed above the mortgage. The purported Lender/Defendant have lost their right to recovery of the money being sought against the Plaintiff since they created a monster out of the loan servicers who the Defendant knew or reasonably should have known would fabricate charges to impose on the Plaintiff. Those additional charges were neither due nor owing by the Plaintiff. That means, that in addition to the normal mortgage, the burden has INCREASED against the Plaintiff, and the Plaintiff has suffered extraordinary harm due to the INCREASED BURDEN placed upon him by the fraudulent charges imposed by the loan servicer. As a result of this NEW HARM, the Plaintiff HAS SUFFERED DIRECTLY FROM THE FRADULENT ASSIGNMENTS and conduct of the servicers. That additional harm therefore GIVES THE PLAINTIFF STADNING to challenge the assignments due to this addition harm, and as a result, the cases cited are simply inapplicable. . . . Defendants have imposed inspection fees, where they did not inspection. They

---

[7] To the extent Plaintiff intended his response to also constitute a request to confirm arbitration such a request would be improper to raise in a responsive memorandum. See, Local Rule 7.1. Moreover, such a request would be moot as the Court has recommended that the purported arbitration award be vacated.

[8] As previously noted, to the extent Plaintiff's memorandum is seeking leave to amend his Complaint, that request is improper. See, Local Rule 7.1; see, e.g., Alexander v. Hedback, No. 11-cv-3590 (ADM/JSM), 2012 WL 2004103, at *5 (D. Minn. June 5, 2012) (explaining that a party cannot amend its complaint through a memorandum), aff'd, 718 F.3d 762 (8th Cir. 2013). Plaintiff has not properly moved to amend his Complaint in the present case, and no such request is properly before this Court.

have compounded late fees and charges, where they were the cause of the late charges. They violated the rules governing loss mitigation imposed by the US and enforces by the CFPB. . . . The Plaintiffs have suffered great and irreparable harm as a direct result of the reward system imposed by the loan service agreement.

Id. at 7–8 (capitalization in original). Therefore, according to Plaintiff, "this court should defer to the arbitrator; should not interfere with the Arbitrators [sic] findings as the pleading standards for an arbitration are simple and straightforward and a pro se litigant's pleadings should be liberally construed." (Id. at 8).

Regarding Plaintiff's responsive memorandum, the Court notes that several points merit initial discussion. For example, like many of Plaintiff's other filings, Plaintiff's responsive memorandum appears to contain a collection of excerpts copied from unrelated Court Orders and the filings of other parties in unrelated cases. (See, e.g., Id.) (referring to multiple plaintiffs and containing portions from Court Orders using the collective "we").

The inclusion of these excerpts apparently copied from unrelated Court Orders and the filings of other parties in unrelated cases is not, in and of itself, detrimental because the Court is required to liberally construe Plaintiff's pleadings. However, likely because of the inclusion of these copied excerpts, Plaintiff's responsive memorandum appears to discuss claims not raised by Plaintiff in the present case and therefore, it could be construed as improperly attempting to raises new causes of action. A party may not, however, "raise new causes of action in their briefing of issues." Alexander v. Hedback, No. 11-cv-3590 (ADM/JSM), 2012 WL 2004103, at *5 (D. Minn. June 5, 2012) (citing Haggins v. City of St. Paul, No. 9-cv-537, 2010 WL 1380134, at *13 (D. Minn. Mar. 1, 2010) (declining to consider claims not raised in pleadings); Butvin v. DoubleClick, Inc., No. 99-cv-4724, 2000 WL 827673, at *13 (S.D.N.Y. June 26, 2000) ("A party is not entitled to amend his complaint through his memorandum.")). Accordingly, to the

extent Plaintiff's responsive memorandum could be liberally construed as attempting to raise new causes of action, the Court declines to consider any such attempted new causes of action.

Similarly, Plaintiff's responsive memorandum contains factual assertions which are not alleged in Plaintiff's Complaint. Because of the inclusion of the excerpts apparently copied from unrelated Court Orders and the filings of other parties in unrelated cases, it is unclear if those purported factual assertions are related to the present case or are held over in copying text from some unrelated case. In any event, here too the Court will not consider these new factual assertions. Generally, in evaluating a complaint, materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). Factual assertions in a party's memorandum are not factual allegations in a Complaint.

It is through the foregoing lens the Court now turns to the merits of Plaintiff's Complaint.

**A.  Standard of Review**

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, the plaintiff's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal quotation marks and citations omitted). The complaint must "state a claim to relief that is plausible on its face." Id. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," but in contrast, "[w]here a complaint pleads facts that are 'merely consistent with' a defendant's liability, it

'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 556–67).

To survive a motion to dismiss based on an alleged failure to state a claim, the factual allegations in a complaint, when assumed true, must suffice to state a claim to relief that is plausible on its face. Riley v. St. Louis Cty. of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Double D Spotting Serv., Inc. v. Supervalu, Inc., 136 F.3d 554, 556 (8th Cir 1998). Courts must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. Aten v. Scottsdale Ins. Co., 511 F. 3d 818, 820 (8th Cir. 2008). However, courts are not bound to accept as true a legal conclusion couched as a factual allegation. Riley v. St. Louis County of Mo., 153 F.3d 627, 629 (8th Cir. 1998); Maki v. Allete, Inc., 383 F.3d 740, 742 (8th Cir. 2004). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." Iqbal, 556 U.S. at 664. When courts undertake the "context-specific task" of determining whether a plaintiff's allegations "nudge" its claims against a defendant "across the line from conceivable to plausible," they may disregard legal conclusions that are couched as factual allegations. See, Iqbal, 556 U.S. at 678–81.

Generally, in evaluating a complaint, materials outside the pleadings cannot be considered on a motion to dismiss. Porous Media Corp. v. Pall Corp., 186 F.3d 1077, 1079 (8th Cir. 1999). However, a court "may consider the pleadings themselves, material embraced by the pleadings, exhibits attached to the pleadings, and matters of public record," including judicial orders. Mills v. City of Grand Forks, 614 F.3d 495, 498 (8th Cir. 2010) (citing Porous Media Corp., 186 F.3d at 1079).

While the Court is required to construe the content within Plaintiff's pleadings liberally as he is proceeding pro se, Plaintiff is nevertheless bound by applicable procedural and

substantive law. See, Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004); Burgs v. Sissel, 745 F.2d 526, 528 (8th Cir. 1984). Additionally, "[t]hough pro se complaints are to be construed liberally, they still must allege sufficient facts to support the claims advanced." Stone v. Harry, 364 F.3d 912, 914 (8th Cir. 2004) (internal citations omitted) see, e.g., Dunn v. White, 880 F.2d 1188, 1197 (10th Cir. 1989) (regarding a pro se plaintiff, "we will not supply additional facts, nor will we construct a legal theory for plaintiff that assumes facts that have not been pleaded"); Cunningham v. Ray, 648 F.2d 1185, 1186 (8th Cir. 1981) ("[P]ro se litigants must set [a claim] forth in a manner which, taking the pleaded facts as true, states a claim as a matter of law.").

**B. Analysis**

As previously observed, based on the assertions in his Complaint and his previously-denied Motion for Temporary Restraining Order he purports to have incorporated into his Complaint, Plaintiff ostensibly raises the following causes of action: a claim for violation of federal wire fraud laws, a claim for violations of the Fair Debt Collection Practices Act (hereinafter "FDCPA"), a claim for violations of the Truth in Lending Act, a claim for violations of the Real Estate Settlement Procedures Act, and a claim for violations of certain Minnesota Statutes. (See, Id. at 5–11).[9]

**i. Overarching issues**

Before addressing the individual causes of action raised in Plaintiff's Complaint, the Court first addresses a threshold issue affecting the Complaint as a whole. As previously observed, in his Complaint, Plaintiff makes the following factual assertions:

> 7. The foreclosing party cannot verify they had legal authority to execute the power of sale clause in the deed of trust/promissory note.
> 8. The foreclosing party has no witness to attest to the dispute.

---

[9] The Court here again notes that Plaintiff does not actual raise any distinct or obvious causes of action. (See, Compl. [Docket No. 1]). The causes of action listed here are the causes of action it appears Plaintiff is seeking to plead when Plaintiff's pleadings are liberally construed in his favor.

9. Defendant's name is not signed on the contract in dispute.
10. The defendant failed to obtain the proper, legal valid assignment of mortgage and power of sale.
11. The law is clear, however, entities foreclosing upon homeowners must strictly comply with State statutory prerequisites to foreclosure.
12. It is the black letter of the law that an entity seeking to foreclose must have the actual legal authority to exercise the power of sale.
13. The current foreclosure process has become an undisciplined and lawless rush to seize homes without a witness, the contract or an accounting of the money trail.
14. There is no language in the contract granting the "Agreement for Signing Authority" to execute the power of sale clause.

(Compl., [Docket No. 1], at 5). Plaintiff fails to indicate the entity or person to which he is referring when he references the "foreclosing party,"[10] and he fails to indicate which Defendant he is referring to when he makes the various references in his Complaint to an unspecified "defendant." (See, Id.).

Plaintiff's Complaint is devoid of any factual allegation as to any specific action taken by any separate Defendant. Rather, Plaintiff seems to refer to the Defendants as a collective singular entity. By failing to make any specific factual allegation as to any action taken by any specific Defendant and instead purporting to conclusorily plead all claims against all Defendants, Plaintiff has failed to meet "the requirement of Rule 8(a)(2) of the Federal Rules of Civil Procedure that a pleading must consist only of 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" Larson v. Jesson, No. 11-cv-2247 (PAM/LIB), Order, at 3 (D. Minn. Aug. 25, 2017). This alone could provide a sufficient basis upon which to recommend that Plaintiff's Complaint be dismissed.

Additionally, because Plaintiff failed to allege any specific factual allegation as to any specific action taken by any Defendant, his Complaint falls short of the pleading requirements of Iqbal and Twombly. Because Plaintiff's Complaint fails to allege any specific action as to any

---

[10] The "Notice of Mortgage Foreclosure Sale" Plaintiff attached to his Complaint indicates that, at the time of the notice of foreclosure sale, the mortgagee was Defendant MERS, as nominee for Defendant Rubicon; however, the notice appears to have been sent to Plaintiff by Defendant Wilford, Geske, & Cook.

specific Defendant, the Complaint fails to plead "factual content that allows the court to draw the reasonable inference that" any "defendant is liable for the misconduct alleged" in the Complaint. See, Iqbal, 556 U.S. 678–81; Twombly, 550 U.S. at 556–67. This too represents a sufficient, independent basis upon which to recommend dismissal of Plaintiff's Complaint.

In an abundance of caution, however, the Court will continue to review the merits of the causes of action which Plaintiff's Complaint—when read in connection with his other filings including his now-dismissed Motion for Temporary Restraining Order—could be liberally construed to contain.

### ii. Federal Wire Fraud Laws

In his Complaint, Plaintiff fails to make any factual allegations related to federal wire fraud laws. (See, Plf.'s Compl. [Docket No. 1]). Plaintiff does assert that, as "mentioned in the" Motion for Temporary Restraining Order, "the foreclosing party is in violation of Federal . . . wire fraud statutes." (Id. at 4).

In his now-denied, Motion for a Temporary Restraining Order, Plaintiff vaguely asserts that Defendants violated certain "federal wire fraud laws." (Plf. Mot., [Docket No. 2], at 5). Plaintiff contends that Defendants "used wire communications, including but not limited to facsimile's [sic], emails, and the internet to accomplish their scheme to defraud" Plaintiff "by causing to be sent, filed, and recorded mortgage documents which they knew or should have known to be fraudulent in violation of 18 U.S.C. Sec. 1343." (Id.). Plaintiff also asserts that Defendants used the "U.S. Mail more than twice to collect an unlawful debt." (Id. at 10). Plaintiff alleges he is therefore entitled to "relief under 'Civil RICO' Federal Racketeering laws (Title 18 U.S.C. 1964)." (Id.).

Here again, it is difficult to discern the particularities of Plaintiff's claims as his now-denied Motion for Temporary Restraining Order appears to be a collection of his own assertions combined with excerpts copied from pleadings of other parties in unrelated cases, as well as, excerpts from other Court Orders in unrelated, unspecified cases. (See, e.g., Plf.'s Mot, [Docket No. 2], at 1, 2, 7, 10) (referring to multiple plaintiffs seeking relief, referring to itself as a district court, referring to itself as the royal we, referring to realtors and property management companies as parties, and referring to a Trustee). However, broadly and liberally construing Plaintiff's allegations, Plaintiff alleges that Defendants' actions of allegedly foreclosing upon Plaintiff's property and causing the impending sale of Plaintiff's property violated the Racketeer Influenced and Corrupt Organization Act (hereinafter "RICO") 18 U.S.C. §§ 1961 et seq. Plaintiff appears to allege that Defendants violated the RICO Act by contravening the wire fraud provision of 18 U.S.C. § 1343, which is included in the RICO Act as one of the predicate acts constituting "racketeering activity."

Pursuant to the RICO Act, it is "unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Nitro Distrib., Inc. v. Alticor, Inc., 565 F.3d 417, 428 (8th Cir. 2009) (quoting 18 U.S.C. § 1962(c)).

"Racketeering activity" is defined to include any act which would subject a person performing the act to indictment under 18 U.S.C. § 1343. See, 18 U.S.C. § 1961(1)(B). A "pattern of racketeering activity" is defined as requiring "at least two acts of racketeering activity." 18 U.S.C. § 1961(5). Section 1964(c) of the RICO Act "provides a private right of action for treble damages to '[a]ny person injured in his business or property by reasons of a

violation' of the Act's criminal prohibitions." <u>Bridge v. Phoenix Bond & Indem. Co.</u>, 553 U.S. 639, 641 (2008); <u>see</u>, <u>Stonebridge Collection, Inc. v. Caramichael</u>, 791 F.3d 811, 822 (8th Cir. 2015).

To establish a claim pursuant to the RICO Act's private cause of action provision, Plaintiff must demonstrate "(1) the existence of an enterprise; (2) defendant[s'] association with the enterprise; (3) defendant[s'] participation in predicate acts of racketeering; and (4) defendant[s'] actions constitute a pattern of racketeering activity." <u>Sinclair v. Hawke</u>, 314 F.3d 934, 943 (8th Cir. 2003) (quoting <u>United HealthCare Corp. v. Amer. Trade Ins. Co.</u> 88 F.3d 563, 570 (8th Cir. 1996)). In the present case, Plaintiff alleges that Defendants participated in mail and wire fraud by foreclosing on his property and causing his property to become subject to a foreclosure sale.

Parties asserting private claims pursuant to the RICO Act, and based on the predicate acts of mail and wire fraud, are required to plead facts with the particularity required by Federal Rule of Civil Procedure 9(b). <u>Nitro Distrib., Inc. v. Alticor, Inc.</u>, 565 F.3d 417, 428 (8th Cir. 2009). Thus, a plaintiff asserting such a predicate act claim must "state with particularity the circumstances constituting a fraud or mistake." Fed. R. Civ. P. 9(b).

Typically, a plaintiff must identify the "who, what, where, when, and how" of the alleged fraud. <u>United States ex rel. Costner v. URS Consultants, Inc.</u>, 317 F.3d 883, 888 (8th Cir. 2003). Generally, a plaintiff must plead "such matters as the time, place and contents of false representations, as well as the identity of the persons making the misrepresentation and what was obtained or given up thereby." <u>Abels v. Farmers Commodities Corp.</u>, 259 F.3d 910, 920 (8th Cir. 2001) (quoting <u>Bennett v. Berg</u>, 685 F.2d 1053, 1062 (8th Cir. 1982)). Even pro se parties are required to plead such claims with the particularity required by Rule 9(b). <u>See</u>, <u>Luther v. Am.</u>

National Bank of Minnesota, 12-cv-1085 (MJD/LIB), 2012 WL 5471123, at *6 (D. Minn. Oct. 11, 2012).

In the present case, Plaintiff has failed to demonstrate with particularity that Defendants participated in predicate acts of "racketeering activity" as that term is defined by § 1961(1), much less that Defendants' actions constitute a "pattern of racketeering activity" as defined by § 1961(5).

Plaintiff fails to allege the "who" of the alleged fraud because Plaintiff fails to present any factual allegation as to which Defendant took any allegedly fraudulent action. Instead, Plaintiff merely refers to the alleged actions collectively. This falls well short of the particularity required by Rule 9(b).

Further, Plaintiff fails to allege sufficient <u>facts</u> demonstrating that Defendants' participated in predicate acts of "racketeering activity" as that term is defined by § 1961(1). Plaintiff simply conclusorily alleges that Defendants engaged in racketeering by committing wire and mail fraud. (<u>See</u>, Compl., [Docket No. 1], at 5; Plf.'s Mot. [Docket No. 2]). To plead mail or wire fraud as a predicate act pursuant to the RICO Act, Plaintiff must show "(1) a plan or scheme to defraud, (2) intent to defraud, (3) reasonable foreseeability that the mail or wires will be used, and (4) actual use of mail or wires to further the scheme." <u>Wisdom v. First Midwest Bank</u>, 167 F.3d 402, 406 (8th Cir. 1999).

In the present case, Plaintiff asserts in only the most generic and conclusory sense that Defendants committed any action using the mail. And to the extent Defendants did participate in any such action through the mail, Plaintiff fails to assert any <u>factual</u> allegations as to what the contents of those mailing were, when those mailings were received by Plaintiff, or how

Defendants made those mailings. In other words, Plaintiff's assertions here too fall well short of the particularity required by Rule 9(b).

Plaintiff also alleges, again in the most conclusory manner, that the contracts and documents upon which Defendants relied to effectuate the foreclosure of Plaintiff's property are fraudulent. Plaintiff's argument in this regard, however, is merely a recasting of the "show me the note" theory. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]). As this Court, and every Court to consider the matter, has previously explained, "show me the note" claims asserting that the foreclosure of a mortgage is invalid if the note and mortgage are held by different entities are frivolous claims in Minnesota. See, e.g., Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980–87 (D. Minn. 2012) (explaining that all courts to have addressed the issue "have held–clearly, repeatedly, and recently–that, under Minnesota law, the entity that holds the mortgage can foreclose on the mortgage even if that entity does not also hold the note"). The Eighth Circuit Court of Appeals has also repeatedly rejected this "show me the note" argument. See, e.g., Butler v. Bank of Amer., N.A., 690 F.3d 959, 962 (8th Cir. 2012). Similarly, Plaintiff makes passing reference to several provisions of the Uniformed Commercial Code in apparent support of his "show me the note" arguments; however, these Uniform Commercial Code references routinely made in support of "show me the note" claims have also been squarely rejected by the Courts. See, e.g., Stein v. Chase Bank USA, N.A., No. 10-cv-203 (PJS/JSM), 2011 WL 882091, at *3–6 (D. Minn. Feb. 9, 2011).

Thus, the Court finds that Plaintiff has failed to allege with particularity sufficient facts demonstrating that Defendants' participated in predicate acts of "racketeering activity" as that term is defined by § 1961(1).

Similarly, even if Plaintiff had alleged facts demonstrating that Defendants engaged in some unspecified predicate "racketeering act," Plaintiff fails to demonstrate that Defendants engaged in a "pattern of racketeering activity" as defined by § 1961(5). A pattern of racketeering activity is shown through two or more related acts of racketeering activity that "amount to or pose a threat of continued criminal activity." Wisdom v. First Midwest Bank, 167 F.3d 402, 406 (8th Cir. 1999) (quoting United HealthCare Corp. v. Am. Trade Ins. Co. 88 F.3d 563, 571 (8th Cir. 1996)). To do so, "a plaintiff must provide evidence of multiple predicate acts occurring over a substantial period of time (close-end continuity) or evidence the alleged predicate acts threaten to extend into the future (open-ended continuity)." Craig Outdoor Adver., Inc., v. Viacom Outdoor, Inc., 528 F.3d 1001, 1028 (8th Cir. 2008).

Even liberally construing Plaintiff's pro se pleadings and drawing all reasonable inferences in his favor, Plaintiff has failed to plead any facts demonstrating a pattern of racketeering activity. To the contrary, the allegations in Plaintiff Complaint, as well as, his purportedly incorporated Motion for Temporary Restraining Order all stem from his dealing with Defendants from a single transaction involving only Plaintiff and the singular mortgage underlying the issues in the present case. Even if accepted as true, such a transaction cannot constitute a pattern of racketeering activity. See, e.g., Handeen v. Lemaire, 112 F.3d 1339, 1353 n. 19 (8th Cir. 1997) (quoting Terry A. Lambert Plumbing, Inc. v. Western Sec. Bank, 934 F.2d 976, 981 (8th Cir. 1991) ("a single transaction which involves only one victim and takes place over a short period of time does not constitute the pattern of racketeering required for long-term criminal activity under a RICO claim")).

Therefore, the Court finds that to the extent Plaintiff raises a claim alleging that Defendants violated the RICO Act by contravening the mail and wire fraud provision of 18 U.S.C. § 1343, Plaintiff has failed to state a claim upon which relief may be granted.

### iii. Federal Debt Collection Practices Act

In his Complaint, Plaintiff also fails to make any specific factual allegations related to his purported Federal Debt Collection Practices Act (FDCPA) claim. (See, Plf.'s Compl. [Docket No. 1]). Plaintiff does make conclusory statements regarding the "contract in dispute"; "legal[ly] valid assignment of mortgage and power of sale" and "actual legal authority to exercise the power of sale" in apparent reference to his purported Federal Debt Collection Practices Act claim. (See, Id.).[11]

Plaintiff asserts that "Defendants improperly misrepresented themselves to plaintiff to be the party in interest with legal authority to collect on debts secured by deed when in fact they are not authorized to collect on behalf of the true party in interest." (Plf. Mot., [Docket No. 2], at 5). Liberally construing the allegations in Plaintiff's pleadings, he asserts Defendants violated the FDCPA by foreclosing on his property and by engaging in the conduct which effectuated that foreclosure. (See, Id.).

The FDCPA was enacted by Congress to protect consumers "in response to abusive, deceptive, and unfair debt collection practices." Schmitt v. FMA Alliance, Ltd., 398 F.3d 995, 997 (8th Cir. 2005). The Courts of this District, however, have previously found that foreclosure proceedings and the activities effectuating those foreclosure proceedings do not constitute debt

---

[11] Here too, it is difficult to discern the particularities of Plaintiff's claims because, as previously observed, Plaintiff's now-denied Motion for Temporary Restraining Order—which he purports to incorporate into his Complaint—appears to be a collection of his own assertions combined with excerpts from pleadings of other parties in unrelated cases, as well as, excerpts from other Court Orders in unrelated, unspecified cases. (See, e.g., Plf.'s Mot, [Docket No. 2], at 1, 2, 7, 10) (referring to multiple plaintiffs seeking relief, referring to itself as a district court, referring to itself as the royal we, referring to realtors and property management companies as parties, referring to a Trustee).

collection under the FDCPA. See, e.g., Fleming v. U.S. National Bank Association, No. 14-cv-3446 (DSD/JSM), 2015 WL 505758, at *2 (D. Minn. Feb. 6, 2015); DeMass v. Peterson, Farm & Bergman, No. 12-cv-2197, 2013 WL 1881058, at *2 (D. Minn. May 6, 2013). Therefore, Plaintiff's claim alleging that Defendants' actions effectuating the foreclosure proceedings underlying the present case violated the FDCPA fails to state a claim upon which relief may be granted.

In addition, even if Defendants' actions in purportedly effectuating the foreclosure of the subject property and causing the foreclosure sale of that property were arguably subject to the FDCPA, the Court would still find that Plaintiff has failed to demonstrate success on the merits of his FDCPA claim. Plaintiff's sole argument as to how the Defendants violated the FDCPA is that Defendants foreclosed on his residence without possessing both the mortgage and the promissory note. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]). This again harkens to a variation of Plaintiff's "show me the note" theory which has been squarely and repeatedly rejected by every Court to consider such an argument. See, e.g., Dunbar v. Wells Fargo Bank N.A., 709 F.3d 1254, 1257 (8th Cir. 2013); Butler v. Bank of Amer., N.A., 690 F.3d 959, 962 (8th Cir. 2012); Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980–87 (D. Minn. 2012). Despite Plaintiff's contention to the contrary, the holder of the recorded mortgage is entitled to foreclose, and that mortgage holder need not also be the note holder to foreclose said mortgage. See, Jackson v. Mortg. Elec. Registration Sys. Inc., 770 N.W.2d 487, 501 (Minn. 2009).

Therefore, the Court finds that to the extent Plaintiff raises a claim alleging a violation of the FDCPA, Plaintiff has failed to state a claim upon which relief may be granted.

### iv.  Truth in Lending Act

In his now-denied Motion for a Temporary Restraining Order, Plaintiff also ostensibly asserts a claim for a violation of the Truth in Lending Act (hereinafter "TILA") arguing that "[t]he Truth in Lending Act, Regulation Z, 12 CFR § 226.23, says that the security agreement signed with a lender can be rescinded if they have not provided the proper disclosures." (Plf.'s Mot., [Docket No. 2], at 6).[12] Notably, however, Plaintiff does not factually assert that any of the Defendants failed to provide Plaintiff with the proper disclosures. (See, Id.). This alone is fatal to Plaintiff's purported TILA claim.

The TILA "grants borrowers the right to rescind a loan 'until midnight of the third business day following the consummation of the transaction or the delivery of the [disclosures required by the Act], whichever is later." Jesinoski v. Countrywide Home Loans, Inc., 135 S.Ct. 790, 792 (2015) (quoting 15 U.S.C. § 1635(a)). Although the TILA provides rescission as a remedy for certain transactions, it expressly excludes recession as a remedy in "residential mortgage transactions." 15 U.S.C. § 1635; see, In re Bestrom, 114 F.3d 741, 745 (8th Cir. 1997) (finding that the TILA does not apply to a mortgage used to acquire real property). The TILA defines "residential mortgage transactions" as "a transaction in which a mortgage, deed of trust, purchase money security interest arising under an installment sales contract, or equivalent consensual security interest is created or retained against the consumer's dwelling to finance the acquisition or initial construction of such dwelling." 15 U.S.C. § 1602(x).

In the present case, the record presently before the Court indicates that the mortgage at issue was used to acquire Plaintiff's residence. (See, Notice of Mortgage Foreclosure Sale

---

[12] For the reasons previously stated, here too it is difficult to discern the particularities of Plaintiff's purported TILA claim. (See, e.g., Plf.'s Mot, [Docket No. 2], at 1, 2, 7, 10) (referring to multiple plaintiffs seeking relief, referring to itself as a district court, referring to itself as the royal we, referring to realtors and property management companies as parties, referring to a Trustee).

[Docket No. 1-1]) (indicating that mortgage underlying the present action was obtained on March 23, 2017, for a residence with the same address as the address Plaintiff provided the Court as his current address); (Compl. [Docket No. 1]) (making repeated references to Plaintiff as the homeowner facing eviction); (Plf.'s Mot. [Docket No. 2]) (making references to Plaintiff as the homeowner demanding relief). Furthermore, in the undersigned's previous Report and Recommendation on Plaintiff's Motion for Temporary Restraining Order, the undersigned reached the same conclusion: that the mortgage at issue in the present case was used to acquire Plaintiff's residence. (Report and Recommendation [Docket No. 11]). Plaintiff did not object to that prior conclusion that the mortgage at issue in the present case was used to acquire Plaintiff's residence, and that Report and Recommendation was adopted by Judge Frank. (Order [Docket No. 39]). Moreover, Plaintiff has not made any factual assertions suggesting that the loan at issue in the present case was anything other than a "residential mortgage transaction." (See, Compl. [Docket No. 1]; Plf. Mot. [Docket No. 2]). Accordingly, to the extent Plaintiff argues that Defendants violated the TILA by not allowing him to rescind the loan at issue in the present case, that argument fails as the TILA explicitly exempts rescission as a remedy under the circumstances in the present case.

Further, assuming solely for the sake of argument that the present case was subject to the rescission remedy in the TILA, Plaintiff has not plead any facts sufficient to show that he exercised or even attempted to exercise his right of rescission in a timely fashion. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]). In fact, Plaintiff fails to plead any facts even suggesting that he has attempted to timely exercise any purported right of rescission. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]).

Therefore, the Court finds that to the extent Plaintiff raises a claim alleging a violation of the TILA, Plaintiff has failed to state a claim upon which relief may be granted.

### v. Real Estate Settlement Procedures Act

Plaintiff next makes only a passing reference to the Real Estate Settlement Procedures Act (hereinafter "RESPA") which Plaintiff generically asserts "[p]rovides remedies for deceptive communications from the lender." (Plf. Mot., [Docket No. 2], at 6). Plaintiff does not make any further, specific factual assertions as to how any of the separate Defendants violated the Real Estate Settlement Procedures Act. (See, Compl. [Docket No. 1]; Plf.'s Mot. [Docket No. 2]).

The RESPA prohibits "kick-backs" to loan brokers and real estate agents, and mandates various disclosures. Specifically, the RESPA requires servicers to provide a written response to a "qualified written request" seeking "information relating to the servicing of [a] loan." 12 U.S.C. § 2605(e)(1).

A "qualified written request" is statutorily defined as "a written correspondence" which "includes . . . the name and account of the borrower" and also includes "a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or" a statement which "provides sufficient detail to the servicer regarding other information sought by the borrower." 12 U.S.C. § 2605(e)(1)(B). After receipt of a qualified written request a servicer must "provide the borrower with a written explanation or clarification that includes . . . information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer," as well as, "the name and telephone number of an individual . . . who can provide assistance to the borrower." 12 U.S.C. § 2605(e)(2)(C).

In the present case, Plaintiff fails to allege facts creating a reasonable inference that he ever sent a qualified written request to Defendants as that terms is defined in 12 U.S.C. §

2605(e)(1)(B). Likewise, Plaintiff fails to allege facts indicating that Defendants failed to adequately respond to any qualified written request in a timely manner.

Even assuming solely for the sake of argument that Plaintiff had allege sufficient facts to demonstrate both that he had provided Defendants with a qualified written response and Defendants failed to adequately respond to said qualified written response in a timely manner, the remedy for such failure is limited to "any actual damages to the borrower as a result of the failure." 12 U.S.C. § 2605(f)(1); Tyus v. OWB REO, LLC, No. 11-cv-1773, 2011 WL 6101919, at *3 (D. Minn. Oct. 25, 2011) report and recommendation adopted by 2011 WL 5854706 (D. Minn. Nov. 21, 2011) ("A claim under RESPA . . . requires a showing that the violation proximately caused the plaintiff damages.") (alteration in original). "[A] RESPA plaintiff must plead and prove, as an element of the claim, that he or she suffered some actual damage as a result of the alleged RESPA violation." Hintz v. JPMorgan Chase Bank, N.A., No. 10-cv-2825, 2011 WL 579339, at *9 (D. Minn. Feb. 8, 2011) (citation and internal quotation marks omitted).

In the present case, the only harm of which Plaintiff complains is the foreclosure on his residence, however, it is unclear how a foreclosure could directly flow from a failure to respond to a qualified written RESPA request. Plaintiff has not alleged any facts demonstrating that any perceived or alleged failure by Defendants to comply with the RESPA caused Plaintiff's presently claimed harm. Under circumstances similar to the present case, Courts have found that plaintiffs who alleged a violation of the RESPA on the basis of or related to an alleged wrongful foreclosure have failed to allege a harm flowing from a violation of the RESPA. See, e.g., Flemings v. U.S. Bank National Association, No. 14-cv-3446 (DSD/JSM), 2015 WL 505758, at *4 (D. Minn. Feb. 6, 2015).

Therefore, the Court finds that to the extent Plaintiff raises a claim alleging a violation of the RESPA, Plaintiff has failed to state a claim upon which relief may be granted.

### vi. Minnesota Statutes

Plaintiff also asserts that Defendants are "in violation of Chapter 514 of the Minnesota Statutes." (Plf. Mot., [Docket No. 2], at 1). Plaintiff, however, only refers to Chapter 514 of the Minnesota Statutes as a whole. Plaintiff fails to allege any specific provision of Chapter 514 which he believes Defendants violated. (See, Id.). Plaintiff only lists general actions a person at large might take which may be in violation of unspecified provisions of Chapter 514. (See, Id.).

These are exactly the type of conclusory allegations and labels Iqbal and Twombly prohibit. Plaintiff fails to assert any specific provision of Chapter 514 which he believes Defendants violated, and Plaintiff fails to allege any specific facts giving rise to a reasonable inference as to the provision of Chapter 514 which he believes Defendants violated or how he believes Defendants violated any unspecified provision thereof.

To the extent Plaintiff may be contending that Chapter 514 was violated by vague fraudulent actions he believes Defendants took which support his "show me the note" theory, as previously discussed, reliance on the "show me the note" theory to challenge foreclosures has been rejected. See, e.g., Dunbar v. Wells Fargo Bank N.A., 709 F.3d 1254, 1257 (8th Cir. 2013); Butler v. Bank of Amer., N.A., 690 F.3d 959, 962 (8th Cir. 2012); Welk v. GMAC Mortgage, LLC, 850 F. Supp. 2d 976, 980–87 (D. Minn. 2012).

Therefore, the Court finds that to the extent Plaintiff raises a claim based on unspecified provisions of Chapter 514 of the Minnesota Statutes, Plaintiff has failed to state a claim upon which relief may be granted.

Because Plaintiff has failed to state any claim upon which relief may be granted as to any claim even arguable raised in his Complaint, the undersigned **RECOMMENDS** all Defendants' Motions to Dismiss, [Docket Nos. 26, 31, 44], be **GRANTED**, and that Plaintiff's Complaint, [Docket No. 1], be dismissed in its entirety.

## VI.    Defendants Caliber and MERS Motion for Sanctions. [Docket No. 74].

Defendants Caliber and MERS's Motion for Sanctions, [Docket No. 74], seeks an Order of this Court requiring Plaintiff to pay Defendants Caliber and MERS' attorney's fees and cost based on what Defendants Caliber and MERS describe as a "baseless and fraudulent arbitration award, which" they believe "Plaintiff invalidly obtained and presented to this Court." (Def.'s Mem., [Docket No. 75], at 1). Defendants Caliber and MERS make their request pursuant to Rule 11 of the Federal Rules of Civil Procedure, 28 U.S.C. § 1927, and the Court's inherent authority to impose such sanctions. (See, Id.).

Rule 11, as relevant to the present Motion, provides that upon presenting a pleading, motion, or other paper to the Court, a party certifies to the best of his or her "knowledge, information, and belief, formed after an inquiry reasonable under the circumstances," that "it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; the "legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;" and "the factual contentions have evidentiary support." Fed. R. Civ. P. 11(b). The Court may impose sanction for a violation of Rule 11. Fed. R. Civ. P. 11(c).

"[T]he standard under Rule 11 is whether the attorney's conduct, viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." Adams v. USAA Cas. Ins. Co., 863 F.3d 1069, 1077 (8th Cir. 2017) (quotation omitted). "Rule 11's main

purpose 'is to deter baseless filings . . . . Rule 11 imposes a duty on attorneys to certify that they have conducted a reasonable inquiry and have determined that any papers filed with the court are well grounded in fact, legally tenable, and not interposed for any improper purpose.'" Id. (alteration in original) (quoting Cooter & Gell v. Hartmarx Corp., 496 U.S. 384, 393 (1990) (internal quotation omitted)).

Section 1927 of Title 28 provides that "[a]ny attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." 28 U.S.C. § 1927. On its face, § 1927 does not appear to apply to pro se parties as a pro se party is not" an attorney or other person admitted to conduct cases in any court of the United States." See, Id. In fact, there is a split among the Circuits as to whether § 1927 can even be construed to be applied to pro se litigants like Plaintiff. See, e.g., Inst. For Motivational Living, Inc. v. Doulos Inst. For Strategic Consulting, Inc., 110 F. App'x 283, 286 (3rd Cir. 2004); Murrin v. Fischer, No. 7-cv-1295 (PJS/RLE), 2008 WL 540857, at *33 (D. Minn. Feb. 25, 2008); Yousefzadeh v. Hill-Rom Co., Inc., No. 17-cv-5501 (SRN/TNL), 2019 WL 1097494, at *2 (D. Minn. Mar. 8, 2019).

In addition, "[f]ederal courts possess certain 'inherent powers,' not conferred by rule or statute, 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" Goodyear Tire & Rubber Co. v. Haeger, 137 S. Ct. 1178, 1186 (2017) (quoting Link v. Wabash R. Co., 370 U.S. 626, 630–31 (1962)). "That authority includes 'the ability to fashion an appropriate sanction for conduct which abuses the judicial process.'" Goodyear Tire & Rubber Co., 137 S. Ct. at 1186 (quoting Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991)). "Because of the potency of inherent powers, a court must exercise its inherent powers with

restraint and discretion, and a primary aspect of that discretion is the ability to fashion an appropriate sanction." Plaintiffs' Baycol Steering Comm. v. Bayer Corp., 419 F.3d 794, 802 (8th Cir. 2005) (quotation omitted); see, Goodyear Tire & Rubber Co., 137 S. Ct. at 1186 n.5 (providing that "such undelegated powers should be exercised with especial restraint and discretion" (quotation omitted)).

However, "[s]anctions are considered based on the record as a whole, rather than merely considering the latest instance of misconduct." Great Lakes Gas Transmission Ltd. P'shipv. Essar Steel MN, LLC, No. 9-cv-3037 (SRN/LIB), 2016 WL 215269, at *3 (D. Minn. Jan. 19, 2016) (citing Nat'l Hockey League v. Metro. Hockey Club, Inc., 427 U.S. 639, 642 (1976)); Jalin Realty Capital Advisors, LLC v. Hartford Cas. Ins. Co., No. 11-cv-165 (JRT/LIB), 2018 WL 3104238, at *12 (D. Minn. Feb. 9, 2018), report and recommendation adopted, 2018 WL 2230919 (D. Minn. May 16, 2018). Where sanctions are imposed on pro se parties for raising frivolous claims, the circumstances typically reflect a "long history of pursuing frivolous claims" which threatens to continue into the future. See, e.g., Carlone v. Asbestos Workers Local 34, No. 13-cv-783 (SRN/JSM), 2014 WL 1652152, at *9 (D. Minn. Apr. 9, 2014), report and recommendation adopted, 2014 WL 1652153 (D. Minn. Apr. 24, 2014), aff'd as modified, 589 F. App'x 344 (8th Cir. 2015).

Based on the circumstances of the present case, the Court finds that the requested sanctions against Plaintiff are not appropriate. First, although Defendants Caliber and MERS invite this Court to assume Plaintiff obtained the purported arbitration award for nefarious purposes, the record presently before the Court lacks evidence that Plaintiff, to the best of his knowledge, was aware of the impropriety of the purported arbitration award and obtained said award for any improper purpose.

Second, as other Court have observed, the main purpose of monetary sanctions is to deter further conduct, but when a party is, or may be, unable to pay such sanctions, it acts as a minimal deterrent to future conduct. See, Carlone v. Asbestos Workers Local 34, No. 13-cv-783 (SRN/JSM), 2014 WL 1652152, at *10 (D. Minn. Apr. 9, 2014), report and recommendation adopted, 2014 WL 1652153 (D. Minn. Apr. 24, 2014), aff'd as modified, 589 F. App'x 344 (8th Cir. 2015).

Here, Plaintiff brings the present action to prevent the foreclosure sale of his residence after he defaulted on the mortgage used to secure said residence. (See, Compl. [Docket No. 1]; Notice of Mortgage Foreclosure Sale [Docket No. 1-1]). The record now before the Court provides a basis for the reasonable inference that Plaintiff would be unable to pay the substantial sanctions Defendants Caliber and MERS seeks to impose upon him. Thus, it seems unlikely that such a sanction would effectively deter future instances of the conduct with which Defendants Caliber and MERS take issue.

Therefore, although the Court has observed and addressed several issues involving the purported arbitration award and recommended that said award be vacated, Defendants Caliber and MERS's Motion for Sanctions, [Docket No. 74], is **DENIED**.

## VII. Conclusion

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED THAT**:

1. Defendants Caliber Home Loans, Inc. (hereinafter "Defendant Caliber") and Mortgage Electronic Registration Systems, Inc.'s (hereinafter "Defendant MERS") Motion for Sanctions Against Plaintiff, [Docket No. 74], is **DENIED**, and

2. Plaintiff's Motion for Imposition of Automatic Stay, [Docket No. 81], is **DENIED**.

Additionally, based on the foregoing, and all the files, records, and proceedings herein,

**IT IS HEREBY RECOMMENDED THAT**:

1. Defendant Wilford, Geske, & Cook's Motion to Dismiss, [Docket No. 26], be **GRANTED**;

2. Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion to Dismiss, [Docket No. 31], be **GRANTED**;

3. Defendant Rubicon Mortgage Advisors, LLC's Motion to Dismiss, [Docket No. 44], be **GRANTED**;

4. Plaintiff's Motion to Compel Arbitration, [Docket No. 51], be **DENIED as moot**;

5. Defendants Caliber Home Loans, Inc. and Mortgage Electronic Registration Systems, Inc.'s Motion to Vacate Arbitration Award, [Docket No. 62], be **GRANTED**;

6. Defendant Rubicon Mortgage Advisors, LLC's Motion to Vacate Arbitration Award, [Docket No. 70], be **GRANTED**;

7. The Arbitration Award, [Docket No. 68-1], be **VACATED**; and

8. Plaintiff's "Notice of Registration of Foreign Final Judgment/Arbitration Pursuant to [28 U.S.C. § 1963]," be **VACATED**.

Dated: August 30, 2019       s/Leo I. Brisbois
              Hon. Leo I. Brisbois
              United States Magistrate Judge

**N O T I C E**

**Filing Objections:** This Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "A party may file and serve specific written objections to a magistrate judge's proposed findings and recommendation within 14 days after being served with a copy of the recommended disposition[.]" A party may respond to those objections within 14 days after being served a copy of the objections. LR 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in LR 72.2(c).